ETTA REYNOLDS v. CHARLES F. SMITH and LEWIS SCHOOLER, Appellants.

**Physicians:** MALPRACTICE: NEGLIGENCE: EVIDENCE. In this action for damages against a physician for his negligence for failing to remove a piece of gauze from the plaintiff's wound after an operation, the physician's evidence was that his method of keeping track of the gauze used in an operation required the nurses to count the pieces used, but it did not appear that that method was followed in plaintiff's case, or that any precaution was taken save tying a knot in one of the pieces of gauze used. *Held,* that evidence of the method adopted by the hospital, in which the operation was performed, for keeping track of gauze used was inadmissible.

**Same:** IMPEACHING EVIDENCE. It appeared in this action that defendant testified on a former trial the same as on this trial of the action that plaintiff was afflicted with a certain disease, and plaintiff on this trial testified that so far as she knew she had never had the disease or any symptoms thereof. *Held,* error to sustain an objection to an inquiry of plaintiff as to whether she gave any testimony on a former trial regarding the matter, as her failure to so testify on the former trial would justify an inference that she acquiesced in the statements of the defendant, and tend to impeach her evidence.

**Same.** There was also evidence that defendant had operated upon the plaintiff previously, and he testified that in disclosing the cause of her trouble at that time he had not said that plaintiff had a specific infliction, and that he had not said at any time that she had a particular disease. *Held,* that error in refusing to permit plaintiff to state whether at the time of the prior operation the defendant had told her she had a particular disease was not prejudicial.

**Malpractice:** CUSTOM AND USAGE: INSTRUCTION. Where there was no evidence of the custom or usage of physicians in performing an operation, refusal of an instruction that all required of physicians was that they follow the custom and usage in the performance of operations in the vicinity where they practiced, was proper. And if there had been such evidence refusal to give such an instruction in this case was especially proper, as the evidence showed a failure of the wound to heal and the continuance of suppuration, which, together with the significance of leaving gauze in the wound required a submission of the question of negligence to the jury.

**Same:** NEGLIGENCE. A physician operating upon a patient at a hospital is not responsible for the acts of nurses and internes in dressing the wound where they were not his employees, unless he was negligent in permitting them to do so.

**Expert evidence:** INSTRUCTION. Where no hypothetical questions are put to experts an instruction that the jury must find the facts on which the expert opinions are founded is not necessary.

**Same.** An instruction that the jury must give to expert evidence only such credit as they deem it justly entitled to and must give it such weight as other evidence, taking into consideration the knowledge possessed by the witnesses testifying as experts, the matters testified to by them and the other evidence in the case, does not disparage expert testimony but cautions the jury against blindly accepting what the experts say, and is proper.

**Malpractice:** CONTRIBUTORY NEGLIGENCE: INSTRUCTION. Where the court instructed the jury to consider what plaintiff did or in the exercise of ordinary care should have done, the charge with reference to contributory negligence was not objectionable in that it failed to direct the attention of the jury to the question of whether plaintiff failed to disclose her suffering or symptoms to defendant, which might have suggested the cause thereof.

**Same:** NEGLIGENCE: EVIDENCE. In this action for malpractice in failing to remove gauze from the wound of plaintiff after an oper-

ation, the evidence is held to require submission of the issue of defendant's negligence to the jury.

**Same:** EXCESSIVE VERDICT. In view of the serious doubt under the evidence as to whether defendant's negligence in operating upon the plaintiff caused the necessity for another operation, and of plaintiff's condition prior to the operation by defendant, the verdict of $2,000 damages is reduced to $1,200.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

SATURDAY, JULY 9, 1910.

ACTION for damages. The defendants appeal. *Affirmed* on condition.

*Dudley & Coffin* and *Spurrier & Parsons,* for appellants.

*Hunn & Jones,* for appellee.

LADD, J.—An abdominal operation for the removal of a cyst or tumor was performed by Dr. Schooler on plaintiff January 16, 1905. Dr. Smith was then Schooler's partner and attended the patient until the 19th, when Schooler, who had been temporarily absent, resumed charge and attended the patient until her return to Blue Earth, Minn., Feb. 23, 1905. The wound had not entirely healed, and, upon her arrival there, Dr. Schmidt dressed it. On the 27th he made an examination, and, according to his testimony, found a piece of surgeon's gauze about sixteen inches square in the abdominal cavity, and, after enlarging the opening, removed it. Though the wound then healed, plaintiff continued to be weak and suffered from melancholia for some time, and in April, 1906, was operated on by Dr. Schmitt for hernia. Recovery for damages is sought for that, as is alleged, defendants were negligent in

failing to discover and remove the gauze, subsequently extracted by Dr. Schmitt.

I.  The interne was asked to explain the practice which obtained at the hospital in determining whether all gauze pads used in operations are accounted for.  An objection to the inquiry was sustained.  The ruling was correct, for there was no evidence that any precaution had been taken in operating on plaintiff save by tying a knot in the second piece of gauze inserted.  True, Dr. Schooler testified that "we have a way or method by which to keep track of the various pieces put in there. . . . The nurses count the pieces of gauze pads that are used."  But the record does not indicate whether such way or method was followed in performing the operation on plaintiff.  Had there been evidence of how track of the gauze was actually kept, doubtless, as bearing on the issue of negligence, testimony that this was in accord with custom would have been competent. In the absence of such evidence, the rule is otherwise.

*1. PHYSICIANS: malpractice: negligence: evidence.*

II.  In rebuttal of the statement of Schooler that he had previously performed two operations and that she had a gonorrheal affection, the plaintiff testified that in so far as she knew she never had had any disease of that kind or any symptom thereof.  On cross-examination, she was asked whether she was examined on that subject at all on the second trial. An objection as not proper cross-examination was sustained. Q. "You gave no testimony at that second trial that you did not have gonorrheal affection even after Dr. Schooler testified that you did?"  This was objected to as incompetent, irrelevant and immaterial, and not proper cross-examination.  The objection was sustained, the court adding, "as not proper in this case at this time.  We are trying this case now and not what was done at some other time and no testimony of this character will be admitted."

*2. SAME: impeaching evidence.*

The last ruling was erroneous. If Dr. Schooler testified at the former trials as suggested, she had the opportunity to have contradicted him, and if she did not do so, but remained silent, it might have been inferred therefrom that she acquiesced in what he had said as true. See *State v. Dexter*, 115 Iowa, 678. Her answer to the inquiry, then, had it been favorable to defendant, would have tended to impeach her testimony that to her knowledge she had not been afflicted with the disease.

Any possible error in rulings by which she was not allowed to say whether about the times of prior operations, Dr. Schooler told her she had gonorrheal affection was obviated by her testimony that in discussing the cause of her disease or trouble at the time of her first operation, he had not said there was specific infection and her statement in response to an inquiry by the court that the doctor had not said at any time that she had gonorrhea. Even though answers to some of the interrogatories might well have been allowed their exclusion could hardly have been prejudicial, for whether she knew that she had been afflicted with the disease could have had little or no bearing on the question as to whether defendants were negligent, and this is true also of the ruling previously mentioned. The evidence was sought to be adduced in cross-examination in rebuttal, and as it properly could have been considered for impeaching purposes only, and even then solely with relation to her knowledge, we regard the rulings as not prejudicial.

3. SAME.

III. Defendants requested several instructions to the effect that all exacted of them was that they follow the customs and usages of physicians in the performing of such operations in the vicinity where they practiced. These were rightly refused, for no evidence was adduced that any particular custom or usage in the matter of avoiding leaving the gauze in plaintiff was actually followed. Moreover, if there had

4. MALPRACTICE: custom and usage: instruction.

been such evidence, these instructions ought not to have been given, for, in view of the failure of the wound to heal, the continuance of suppuration, together with the significance of leaving such a substance in the body, the issue of negligence must have been submitted to the jury.

IV.   The evidence disclosed that nurses and the interne sometimes dressed the wound.   They were not employees or agents of the defendants, and unless defend-

5. SAME:
   negligence.

ants were negligent in permitting this to be done by them, they were not responsible for their acts save in so far as their duty exacted examination of the wound and proper treatment.   Had there been evidence tending to show that from the acts or omissions of said nurses and interne a gauze became lost and was allowed to remain in plaintiff's abdomen, the jury must have been instructed as above, but in the absence of such evidence, and especially in view of the explicit instructions as to the necessity of an affirmative finding of negligence on the part of defendants there was no error in refusing to give the sixteenth instruction requested.

V.   That portion of the eighth instruction following is criticised:

Though it is with a view of aiding you in determining the questions submitted to you that expert testimony has been admitted, you should bear in mind that the

6. EXPERT
   EVIDENCE:
   instruction.

opinions of experts may be correct or incorrect, and that such testimony, depending on whether it tends to reveal the truth or otherwise, may or may not aid you in arriving at a correct conclusion, and that upon you rests the responsibility of a true verdict.   The expert testimony should be weighed and considered by you as you weigh and consider the other testimony, and taking into consideration the amount of skill and knowledge possessed by the witnesses giving expert testimony, the matters testified to by them, the other evidence and facts and circumstances of the case, you should give to the expert testimony such weight

and credit, and only such weight and credit, as you deem it justly entitled to receive. It is your duty to give to the evidence, and all of the evidence in this case, full and fair consideration, and draw therefrom the conclusion which your judgment and consciences approve as just and right. When expert witnesses testify to matters of fact, from personal knowledge, their testimony, as to facts within their personal knowledge, should be considered the same as that of any other witnesses who testify from personal knowledge.

As we understand counsel, the criticism is that the jury was not told the facts upon which expert opinion is founded must be fully proven. But no hypothetical questions were put.

Nor do we think the instruction, when fairly construed, disparaged expert testimony or indicated that it might be rejected because such was its import. Like other testimony it must reveal the truth in order to be of aid to the jury. That it may or may not be correct is also true. The manifest design of the instruction was to caution the jury against blindly accepting what experts on either side had said, as is often likely to be done, owing to the expert's knowledge and the jury's ignorance of the subject of inquiry, and to emphasize their duty to apply the same rules in weighing and testing expert as is applied to other testimony. The instruction is not open to fair criticism.

7. SAME.

VI. Exceptions to the fourth and seventh instructions are unfounded. The former states the standard by which the skill of physicians is to be tested according to the prior decisions of this court. *Whitesell v. Hill,* 101 Iowa, 629. The latter was on the subject of contributory negligence, and the criticism is that attention was not directed to whether plaintiff omitted to disclose her sufferings, or symptoms which might have suggested the cause thereof. This, however, was included in the suggestion that the jury consider "what

8. MALPRACTICE: contributory negligence: instruction.

she did or in the exercise of ordinary care should have
done."

VII.   Counsel for appellants contend that the record
as a whole does not show that defendants failed to exercise
the degree of skill and care exacted in such cases.   That

9. SAME:
negligence:
evidence.

both are eminent in their profession alone
can not exonerate them from the charge of
negligence.   The most proficient are sub-
ject to the infirmities of human nature, and as the books
demonstrate, sometimes may lapse below the standard by
which their conduct is to be measured.   The history of the
patient was such as permitted of no relaxation in attention
at and after the operation.   At an operation in 1900,
Dr. Schooler had removed her ovaries and fallopian tubes,
and at another operation in 1901, had removed her womb.
If she was afflicted with a gonorrheal affection, this may
have exacted greater caution, or might have been thought
to account for the delay in healing after the operation was
performed.   As said, this last operation was for the removal
of a cyst, about as large as the fist, and at the lower left-
hand corner of the abdominal cavity.   An opening was
made in front of the abdomen over the bladder.   The
intestines were packed back with gauze and the left hand
inserted to the tumor.   It was adherent to the intestines
and about half of it attached to the abdominal wall.   The
tumor was broken in attempting to remove it, and blood
clots, purulent matter, and serum ran therefrom into
the hand, and was absorbed by the gauze pad.   After its
removal, the cavity from which it was taken was packed
with gauze, and then the gauze first inserted removed.
Small pieces of gauze were used in mopping the blood away
so that the tissues could be seen, but they were thrown into
a receptacle when released from the hand.

Dr. Schooler testified that two gauze pads were left
in the patient, and Dr. Smith, that he removed these pieces
three days later.   It was the habit of Dr. Schooler to knot

the second piece of gauze inserted and Smith found one of those removed in that condition. He then inserted another piece of gauze several ·yards long to prevent bleeding and to act as a drain, leaving the end protruding through the wound. Upon· Schooler's return on the second day thereafter he resumed charge and inserted a drainage tube and was of opinion that had there 'been gauze in the body he would have discovered it. Before the patient left for home, he testified to having again examined her without discovering anything abnormal save the continued suppuration. On the other hand Mrs. Reynolds related that Dr. Smith removed some of the gauze on Thursday after the operation had been performed on the Monday previous, cutting it off with scissors and some more in the same way on the following day, and that she did not remember of any more being inserted. Her husband's testimony was corroborative, and to the effect that Dr. Smith removed the last of the gauze on Sunday. It will be noted that none of the witnesses pretend to account for the gauze inserted by Dr. Smith after removing the pads put in by Dr. Schooler, but it appears to have been several times longer than that extracted by Dr. Schmidt. Of course neither of the defendants intentionally allowed any foreign substance to remain in the abdomen. No one so claims. But the jury might have found that the gauze was taken therefrom as testified by Dr. Schmidt; that it should have been removed within a few days after the operation; ·that the failure of the wound to heal indicated an abnormal condition; and that, even though the patient had suffered from specific infection, this exacted careful examination as to the cause; and that, all this being so, the issue as to whether had defendants exercised that degree of skill and care required of them, the gauze would have been discovered and removed before plaintiff left the hospital, was for the jury to determine.

IX. The jury allowed damages in the sum of

$2,000, and it is contended by appellants that this is excessive. We are inclined to this view. It will be recalled that the operation was performed January 16, 1905, and that the gauze might properly have been allowed to remain for about a week, and it was removed February 27th following. The circumstances that the wound healed within a few days thereafter tended strongly to show that the consequences were not serious. That she recovered immediately after the operation for hernia in April, 1906, tended to prove that the suffering from melancholia, headache and insomnia were due to the hernia, rather than other conditions produced by leaving the gauze pad in the abdomen. Dr. Schmitt thought the hernia due to the last-mentioned cause, but admitted that it was likely to result from a second or third operation at the same locality. It is exceedingly doubtful whether the record warrants the inference that the hernia was attributable to the delay in healing, due to the gauze pad. In view of this circumstance and plaintiff's condition prior to the operation, we think she ought not to have been allowed to exceed $1,200, and if plaintiff shall file a remittitur of all above that sum within thirty days from the filing of this opinion, the judgment will be affirmed; otherwise reversed.—*Affirmed* on condition.

10. SAME:
excessive
verdict.