[Civ. No. 1739.   Second Appellate District.—June 18, 1915.]

JOSE FARAS, Respondent, v. THE LOWER CALIFORNIA DEVELOPMENT COMPANY (a Corporation), Appellant.

NEGLIGENCE—ACTION FOR DAMAGES—PERSONAL INJURIES—ALIEN PARTIES—JURISDICTION OF STATE COURT.—As between aliens, state courts have jurisdiction to deal with most forms of transitory actions; and this is true of an action brought by a citizen of Mexico against a British corporation doing business in this state and having a business agent at the port of San Diego, for personal injuries alleged to have been received by plaintiff through the explosion of gasoline on defendant's vessel upon which plaintiff was employed as a sailor.

ID.—ADMIRALTY JURISDICTION.—Admiralty jurisdiction extends over controversies of contract or tort, arising on or concerning ships navigating the high seas, or where the tide ebbs and flows, or upon any of the navigable rivers of the country; but such a cause of action as in this case is not a subject exclusively within the jurisdiction of the admiralty court, but is one where concurrent jurisdiction is allowed to the law forums of the state.

ID.—JURISDICTION OF FEDERAL COURTS—SECTION 563 UNITED STATES REVISED STATUTES.—Subdivision 8 of section 563 of the United States Revised Statutes, defining the jurisdiction of the federal courts, provides that such jurisdiction shall include "all civil causes of admiralty and maritime jurisdiction, *saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it.*"

ID.—COMMON-LAW REMEDY—MEANING OF.—The clause "saving to suitors in all cases the right of a common-law remedy, where the common

law is competent to give it," as used in subdivision 8 of section 563 of the United States Revised Statutes, is intended to save the remedy or right of action in those courts which proceed according to the course of the common law as distinguished from admiralty proceedings, and the words "common-law remedy" do not necessarily imply an action or remedy obtainable in a common-law court, but are equivalent to the means employed to enforce a right or redress an injury; nor are they limited to such causes of action as were known to the common law at the time of the passage of the Judiciary Act.

ID.—LAW OF GREAT BRITAIN INAPPLICABLE.—The contention that the law of Great Britain as it defines the responsibility of a master toward his servant should have been applied in considering the liability of the defendant at the trial, cannot be maintained, where it was not shown nor alleged that the contract of employment of the plaintiff was made at any place outside of the state of California, conceding that such a condition of fact would have rendered the law of this state inapplicable.

ID.—PLEADING AND PROOF—NEGLIGENCE.—Where plaintiff alleged that the forecastle of the ship, which consisted of sleeping quarters and in which plaintiff and other sailors employed on the vessel were engaged in destroying bed bugs with gasoline at the time of the explosion resulting in plaintiff's injuries, was in a heated condition, not ventilated, and that about the floor were the heads of unburnt matches; and further that he was unaware of the dangerous conditions which surrounded him at the time he was called upon to assist in the work of fumigating the compartment, these allegations sufficiently described the place in which the work such as plaintiff was called upon to perform could be done only at the risk of great personal injury being suffered; and the deduction of negligence on the part of the defendant would be necessarily drawn from the conditions described; and although the evidence did not show what particular act or thing produced the ignition of the gasoline or its vapor, such evidence was sufficient to show that the explosion was produced through no negligence of the plaintiff.

ID.—EVIDENCE—BURDEN OF PROOF—PRESUMPTION OF NEGLIGENCE.—The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence sufficient to rebut this presumption. If the facts proved make it probable that the defendant violated his duty, it is for the jury to decide whether he did so or not.

ID.—DOCTRINE OF RES IPSA LOQUITUR—APPLICATION OF RULE.—Proof of an injury, occurring as the proximate result of an act of the defendant, which would not usually, if done with due care, have injured any one, is enough to make out a presumption of negligence, and the burden then shifts to the defendant to show his free-

dom from negligence. This rule of presumption of negligence is also properly applied when the injury sustained is in the course of a plaintiff's employment as a servant of the defendant.

ID.—DUTY OF MASTER TO FURNISH SAFE PLACE AND SAFE INSTRUMENT-ALITIES—NEGLIGENCE OF FELLOW EMPLOYEE.—Where the master has discharged his duty of providing a reasonably safe place and like instrumentalities to be used by his employee, then the inference which might fairly be drawn from damage occurring to the servant would be that the negligence, if any, which produced the injury was due to the act of some fellow employee, for which act the master would not be liable. In such a case the above rule should not be applied. But where the negligence charged is attributed to the dangerous and unsafe condition of the place or of the instrumentalities furnished to the servant with which to perform his work, when by reasonable care either might have been made reasonably safe, then the inference of negligence must attach directly to the master, and it matters not that the fact may be that the last inciting cause which provoked into activity the dangerous agencies was contributed by a fellow-servant. The responsibility is that of the master, because he has failed to discharge toward the servant one of the prime duties the performance of which the law does not permit him to delegate to another.

ID.—UNBURNT MATCHES ON FLOOR—DUTY OF MASTER TO REMOVE.—The jury was warranted in concluding that some of the unburnt matches which it was shown had been left lying about the cement floor of the place had become ignited under the boot of some one of the men and so produced the explosion. It was the duty of the defendant to have removed such dangerous agencies before requiring its servant to work in the compartment with the inflammable liquid admitted to have been there used.

ID.—EVIDENCE—IGNORANCE OF PLAINTIFF OF DANGER.—It was proper to admit testimony showing that the plaintiff was ignorant of the dangerous qualities possessed by gasoline, and that he had not been warned as to the care required in its use.

ID.—EXHIBITING INJURIES TO JURY.—It was not error to allow the plaintiff to show the result of the injuries received by exhibiting himself before the jury, where his testimony showed what his physical condition had been prior to the accident.

ID.—INSTRUCTIONS — NEGLIGENCE OF FELLOW-SERVANT.—There was no error in refusing an instruction proferred by defendant to the effect that the defendant could not be held liable for the negligent act of a fellow-servant working with plaintiff, where the charge of negligence concerned one of the prime duties of the master, which would not allow in excuse the claim to be made that a fellow-servant was alone responsible.

ID.—VERDICT—WHEN NOT EXCESSIVE.—Where it was shown that the plaintiff, by reason of the explosion, lost the use of both hands

and had been otherwise disfigured and injured by the flames, that he was about thirty-two years of age, and that he had theretofore been a strong, able-bodied man, a verdict of twelve thousand dollars was not excessive.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. W. R. Guy, Judge.

The facts are stated in the opinion of the court.

L.' L. Boone, for Appellant.

Doolittle & Morrison, for Respondent.

JAMES, J.—This is an action to recover damages for personal injuries alleged to have been suffered by the plaintiff through the negligence of the defendant. The jury in the case returned a verdict in favor of the plaintiff for the recovery of the sum of seventeen thousand five hundred dollars, which was afterwards reduced by the court to the sum of twelve thousand dollars as a condition attached to the denial of defendant's motion for a new trial. Defendant appeals from the judgment and from an order refusing it a new trial.

Plaintiff, a citizen of Mexico, at the time he suffered his injuries was a sailor employed upon the "St. Denis", a steamship owned by the defendant, a British corporation. This ship, in March, 1907, was plying between the ports of San Diego and Ensenada. On the sixteenth day of March, of the year mentioned, the steamship was tied to a wharf at San Diego and there placed for the purpose of discharging or taking on cargo. The forecastle on the steamer was an apartment of about twenty-five by fifteen feet, general dimensions. It served the usual purpose of such an apartment; that is, furnishing sleeping quarters for the sailors and men employed upon the steamship. It having become infested with bed bugs so as to make its occupation uncomfortable to the employees, the master, as he left the steamship on the morning of the day mentioned, gave orders to his mates to have the forecastle cleaned up and fumigated, instructing them to either use steam or gasoline. At about the noon hour this work was begun, the mates choosing to

use gasoline, which they placed in open buckets and carried into the compartment and there sprinkled it about, using a paint brush in the operation, as well as throwing it on from the buckets. The idea was to saturate the crevices and variout chinks where the bugs might conceal themselves, and also fill the compartment with the fumes of the volatile liquid. When the operation was completed it was intended that the room should be closed and left in that state for some hours. There were called to the assistance of the men in the doing of this work this plaintiff and two other sailors, one a youth. After the work had been in progress for ten or fifteen minutes the gas generated through the evaporation of the gasoline exploded. The explosion was severe and the flame accompanying it of such intensity as to singe the hair of a sailor who stood on deck fifteen feet from the companionway which led down into the forecastle. The stairs leading down this way were also blown out and an ax was thrown outward until it struck the mast. Of the men at work in the compartment, all suffered injury, the youth being injured so grievously that he died within a short time. This plaintiff was so badly burned that he lost the use of his two hands and was otherwise injured and disfigured. As to the foregoing matters, they were established as facts by all of the testimony and without dispute. There was other testimony in support of corresponding allegations in the complaint to the effect that the forecastle at the time the gasoline was used in it in the manner described was littered with dirt and rubbish and that burnt and unburnt matches were generally distributed about the floor, and that the day was warm; that a steampipe used to feed the hoisting engine on deck passed through this compartment and that it was heated at the time, although not to a great degree. The men testified that it was so warm in the room that they perspired freely. It was further shown that plaintiff was inexperienced in the use of gasoline and had no knowledge of its inflammable, volatile, or dangerous character. All of these things were alleged and there was evidence introduced to establish the facts accordingly. There was no testimony given by any one to show exactly what caused the gasoline or gasoline vapor to ignite and produce the explosion and attendant fire. This condition of proof has furnished to

the appellant ground for the argument that the plaintiff failed to show any act of negligence chargeable to his employer which contributed to produce his injuries. The subject will be discussed elsewhere in this opinion.

Certain law questions touching the matter of the jurisdiction of the court, as to the parties and subject-matter of the action, are elaborately treated of in the briefs of counsel on both sides. Defendant was a British corporation doing business in the state of California and having a business agent at the port of San Diego. These facts are alleged in the complaint and were established by the evidence. How the summons was served does not appear; for neither that document nor the proof of service thereof are incorporated in the transcript. The copy of the second amended complaint appears therein, together with the demurrer and answer of the defendant. We do not understand that any question is made as to the regularity of the service of summons, but rather that the jurisdictional points proposed by appellant are:

1. That the action being between aliens the federal courts alone could assume jurisdiction.

2. That regardless of the forum being determined to be that of federal jurisdiction, the subject-matter of the action involved a maritime cause which is only cognizable in a court of admiralty.

As between aliens, the state courts have jurisdiction to deal with most forms of transitory actions. (*Orosco* v. *Gagliardo,* 22 Cal. 85; *Roberts* v. *Dunsmuir,* 75 Cal. 203, [16 Pac. 782].) The subject was also discussed in the case of *Eingartner* v. *Illinois Steel Co.,* 94 Wis. 70, [59 Am. St. Rep. 859, 34 L. R. A. 503, 68 N. W. 664], where a number of authorities in agreement with the view indicated in the California cases are given, and the court there said: "A court of this state would have jurisdiction of a transitory action of this nature where it arose in a foreign country, or on the high seas, and both parties to the action were aliens, provided jurisdiction of the person could be obtained."

The cause of action embraced a subject not exclusively within the jurisdiction of the admiralty court, but one where concurrent jurisdiction is allowed to the law forums of the state. Admiralty jurisdiction extends over controversies

of contract or tort, arising on or concerning ships navigating the high seas, or where the tide ebbs and flows, or upon any of the navigable rivers of the country. Subdivision 8 of section 563, United States Revised Statutes, [4 Fed. Stats. Ann. p. 220, U. S. Comp. Stats. 1901, p. 457], defining the jurisdiction of the federal courts, provides that such jurisdiction shall include "all civil causes of admiralty and maritime jurisdiction, *saving to suitors in all cases the right of a common-law remedy, where the common law is competent to give it.*" This provision has been construed in a number of decisions and the construction established for it is succinctly expressed in the following paragraph taken from Cyclopedia of Law and Procedure, volume 1, page 811: "The clause saving to suitors a common-law remedy where the common law is competent to give it is intended to save the remedy or right of action in those courts which proceed according to the course of the common law as distinguished from admiralty proceedings, and the words 'common-law remedy' do not necessarily imply an action or remedy obtainable in a common-law court, but are equivalent to 'the means employed to enforce a right or redress an injury,' nor are they limited to such causes of action as were known to the common law at the time of the passage of the Judiciary Act." (See, also, *Waring* v. *Clarke,* 5 How. 441, [12 L. Ed. 226]; *Leathers* v. *Blessing,* 105 U. S. 626, [26 L. Ed. 1192]; *Philadelphia, Wilmington & Baltimore R. Co.* v. *Philadelphia & Havre de Grace Steam Towboat Co.,* 23 How. 209, [16 L. Ed. 433].)

It is also urged that the law of Great Britain as it defines the responsibility of a master toward his servant should have been applied in considering the liability of the defendant at the trial. It was not shown nor alleged that the contract of employment of the plaintiff was made at any place outside the state of California, conceding for the purpose of giving the most weight to this point that such a condition of fact would have rendered the law of this state inapplicable. The trial court struck out the allegation in the answer as to what the provisions of the British law were as applied to the relation of master and servant, and so properly disposed of that matter; for it cannot be that all contracts made by a corporation having its legal domicile

in a foreign country must be judged by the laws of that country, regardless of where they may be made or regardless of where the cause of action arises.

The appellant next contends that the complaint did not state a cause of action for the same reason that the proof was insufficient, to wit: that the specific act of negligence which caused the gasoline to explode was not shown. The plaintiff with much circumstance and detail did allege that the forecastle at the time the gasoline was distributed about in it was in a heated condition, not ventilated, and that about the floor were the heads of unburnt matches; and further that he was unaware of the dangerous conditions which surrounded him at the time he was called upon to assist in the work of fumigating the compartment. These allegations, we think, sufficiently describe a place in which the work such as plaintiff was called upon to perform could be done only at the risk of great personal injury being suffered. In that view, the deduction of negligence would be necessarily drawn from the conditions described. And while the evidence did not show what particular act or thing produced the ignition of the gasoline or its vapor, such evidence was sufficient to show that the explosion was produced through no negligence of the plaintiff. It is said in Shearman & Redfield on Negligence (vol. 1, sec. 58): "The plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of the defendant and of resulting injury to himself. Having done this, he is entitled to recover, unless the defendant produces evidence sufficient to rebut this presumption. . . . If the facts proved make it probable that the defendant violated his duty, it is for the jury to decide whether he did so or not. (Sec. 59.) Proof of an injury, occurring as to the proximate result of an act of the defendant, which would not usually, if done with due care, have injured any one, is enough to make out a presumption of negligence." These statements of the text-writers embody the rule of evidence commonly expressed by the phrase *res ipsa loquitur*. The result of its application is that the plaintiff is not required to show particularly what the specific act of negligence was which produced the accident, but is only required in some circumstances to show that the accident is one which would not ordinarily occur had due care been em-

ployed. The burden then shifts to the defendant to show his freedom from negligence. This rule is so well understood and of such common application as to render citation of authorities on the general subject unnecessary. Appellant, however, denies that this rule of presumptive negligence may properly be applied when the injury is sustained in the course of a plaintiff's employment as a servant of a defendant. It has sometimes been so held. (And *contra: Ingalls* v. *Monte Cristo Oil Co.,* 23 Cal. App. 652, [139 Pac. 97].) This, however, is not a case where an accident with resulting injury has occurred while the servant was performing his work in a place made reasonably safe and with instrumentalities of a reasonably safe character. Where the master has discharged his duty of providing a reasonably safe place and like instrumentalities to be used by his employee then the inference which might fairly be drawn from damage occurring to the servant would be that the negligence if any, which produced the injury was due to the act of some fellow employee, for which act the master would not be liable. In such a case it can be readily seen why the rule embodied in the maxim referred to should not be applied. But where the negligence charged is attributed to the dangerous and unsafe condition of the place or of the instrumentalities furnished to the servant with which to perform his work, when by reasonable care either might have been made reasonably safe, then the inference of negligence must attach directly to the master, and it matters not that the fact may be that the last inciting cause which provoked into activity the dangerous agencies was contributed by a fellow-servant. The responsibility is that of the master, because he has failed to discharge toward the servant one of the prime duties the performance of which the law does not permit him to delegate to another. In this case, taking into consideration all of the conditions surrounding the plaintiff at the time he received his injuries and which the evidence fully illustrated, the jury was warranted in concluding that some of the unburnt matches which it was shown had been left lying about the cement floor of the place had become ignited under the boot of some one of the men and so produced the explosion. It was the duty of the defendant to have removed such dangerous agencies before requiring its servant to work in the compartment with the inflammable liquid admitted to have been there used.

What has already been said answers appellant's complaint, further made in the briefs, that the court erred in not granting the motion for judgment of nonsuit.

The testimony, admitted over objection, showing that the plaintiff was ignorant of the dangerous qualities possessed by gasoline and that he had not been warned as to the care required in its use, was properly received. Counsel for appellant in his brief on this point says: "The accident was not caused by the respondent, and, hence, his ignorance as to the character of gasoline is wholly immaterial, as it in no way had anything to do with the explosion." That is all true, but had respondent, fully realizing all the dangers attendant upon the work which he was performing at the time of the accident, proceeded with it without protest, it might well be said that he voluntarily assumed the risk of damage resulting to him.

It was not error for the plaintiff to show the result of the injuries received by exhibiting himself before the jury. This "view" testimony was proper where the plaintiff showed, as his testimony did, what his physical condition had been prior to the accident.

Error is predicated upon the refusal of the trial judge to give a number of instructions offered by defendant, but only one of these alleged errors is particularly presented by the brief. In an offered instruction (Tr., fols. 289, 292) the jury was told that the appellant could not be held liable for the negligent act of a fellow-servant working with the plaintiff. The charge of negligence here, as has been pointed out, concerned one of the prime duties of the master, which would not allow in excuse the claim to be made that a fellow-servant was alone responsible. Other portions of the offered instruction which were proper to be given were sufficiently covered by defendant's instruction No. 8.

Lastly, it is complained that the judgment is for an excessive amount and should be set aside for that reason. The injuries suffered by the plaintiff were severe. He had, according to his testimony, lost the use of both hands and had been otherwise disfigured and injured by the flames. He was but 32 years of age and had theretofore been a strong, able-bodied man. Under such facts it cannot be said that the trial judge committed an error of judgment in allowing the sum of

twelve thousand dollars damages as he did upon reducing the amount fixed in the verdict of the jury.

No errors appear which justify a reversal.

The judgment and order are affirmed.

Conrey, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 16, 1915.