MEADOWS v. PATTERSON.—109 S. W. (2d) 417.

Eastern Section. July 3, 1937.

Petition for Certiorari denied by Supreme Court, October 16, 1937.

Silas Williams, of Chattanooga, for plaintiffs in error.

Lynch, Bachman, Phillips & Lynch, of Chattanooga, for defendant in error.

McAMIS, J. Harry D. Meadows, hereinafter referred to as plaintiff, has appealed in error from the action of the court in directing a verdict in favor of the defendant below, Dr. A. M. Patterson, herein referred to as defendant. The action is for damages resulting from the loss of an eye which was injured in some manner while plaintiff was under the influence of an anesthetic during or following an operation for appendicitis performed by defendant.

The declaration charges that defendant, in the performance of the operation, and in the handling, treatment, and care of plaintiff during and after the operation, negligently failed to extend proper care and protection to plaintiff, with the result that, while under the influence of an anesthetic and while still unconscious, plaintiff's right eye was severly cut and the sight thereof destroyed.

No negligence is charged in the performance of the operation and it is admitted that the operation itself was skilfully performed and that good results were obtained. The charge is that defendant, or some one acting under his direction and control, was guilty of some ulterior act or omission, not immediately connected with the operation, which resulted in the injury to plaintiff's eye while he was unconscious. It is satisfactorily shown that plaintiff's eye was injured, as charged, while he was under the influence of an anesthetic, but there is no proof as to how it was injured or whether it was injured while plaintiff was still in the operating room or after the operation had been completed and he had been removed to his private room in the hospital. The doctrine of res ipsa loquitur is invoked to overcome the absence of proof in these particulars.

It appears without any substantial conflict in the proof that defendant was called to the home of plaintiff on October 16, 1935, and that he found plaintiff suffering from acute appendicitis. An immediate operation was recommended and, by the consent of plaintiff, but without express authority to do so, defendant engaged the services of Dr. Gilbert to administer the anesthetic and also arranged for a room in the hospital for plaintiff's use following the operation. Miss Nipper, a graduate and experienced nurse, was selected by defendant from a nurse's register maintained by the hospital to wait upon plaintiff in his private room at the hospital following the operation.

The operation was performed about 6 o'clock p. m. Defendant was

the surgeon in charge of the operation. He was assisted by Dr. Gilbert, who administered the anesthetic, and, we infer, by a hospital nurse. Immediately following the completion of the operation plaintiff was wheeled by a hospital attendant to his room. As soon as defendant had removed his operating gown, he examined plaintiff in his room, found his condition satisfactory, and, in the presence of members of plaintiff's family, announced his intention of leaving the hospital and that the patient would be left in the care of Miss Nipper. Plaintiff was again visited by defendant between 10 and 11 o'clock and, his condition appearing to be satisfactory, defendant went to his home and retired. Plaintiff regained consciousness at 4 o'clock the following morning and it was discovered that his eye had been injured. A specialist was called and expressed the opinion that plaintiff's eye had been cut by a sharp instrument, most probably by a finger nail.

Plaintiff testified that his first sensation, upon regaining consciousness, was a severe burning pain in his right eye. It is definitely shown that plaintiff's eye was free from injury when the anesthetic was administered, and it follows necessarily that his eye must have been injured while he was in the operating room under the immediate control of defendant, as he was being wheeled from the operating room to his private room in the hospital, or while in charge of Miss Nipper during the night.

■ "The doctrine of res ipsa loquitur asserts that, whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury will be deemed to afford sufficient evidence to support a recovery, in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care." Lewis v. Casenburg, 157 Tenn., 187, 7 S. W. (2d), 808, 60 A. L. R., 254.

■■ It it generally held that this doctrine has no application to the ordinary malpractice case (Loudon v. Scott, 58 Mont., 645, 194 P., 488, 12 A. L. R., 1487; 48 C. J., 1142), the reason for denying its application being that a physician or surgeon does not undertake to insure a recovery and that the result of medical treatment and surgery is, ordinarily, so uncertain that no inference of negligence attends a failure to effect a cure. However, where, as in this case, the liability of the physician or surgeon is predicated upon alleged negligence for want of reasonable care of the patient while unconscious and not upon an alleged want of skill in diagnosis or treatment, we think a practical administration of justice dictates the application of the doctrine when it appears that a sound and unaffected member of the body is injured or destroyed while the patient is unconscious and under the

immediate and exclusive control of the physician. In no other way, under usual and ordinary conditions could the patient obtain redress for such an injury, and it is no hardship upon the defendant to explain, as he alone can, how the injury occurred. If innocent of any wrong, the door of escape is left open. The distinction between such a case and the ordinary malpractice case is recognized and upheld in the case of Vonault v. O'Rourke, 97 Mont., 92, 33 P. (2d), 535, where other holdings of like import are cited and discussed.

 It is no sufficient answer that the injury is not shown to have resulted from the use of an "instrumentality" under the management and control of defendant. Granting that the wound was self-inflicted, we think it is, nevertheless, true, substantially, that plaintiff's injury resulted from an "instrumentality" under the immediate control of defendant. A human body, freed of the control of a conscious and rational mind, becomes an "instrumentality" potentially dangerous.

 In this case it is insisted that plaintiff remained under the control of defendant from the time the anesthetic was administered until he regained consciousness the following morning. We think this was true as long as he remained in the operating room. Defendant admits that Dr. Gilbert and the hospital nurse acted as his assistants and were under his direction and control while plaintiff remained in the operating room. However, we do not think it may be fairly said that plaintiff remained under the control of defendant after he was visited by defendant in his private room following the operation and left by defendant in the care of Miss Nipper. It is true that Miss Nipper was selected by defendant but it is not shown that the nursing of plaintiff, following the operation, was any part of the undertaking of defendant. He received no remuneration for this service but, on the contrary, the nurse was paid by plaintiff. While, ordinarily, the question of agency is one of fact which must be submitted to the jury where the evidence is conflicting, we do not think reasonable minds could entertain different conclusions with respect to the agency of Miss Nipper after plaintiff was left in her care.

 The rule is that a hospital nurse, although not in the regular employ of the operating surgeon, is under his special supervision and control during the operation and the relation of master and servant, or principal and agent, exists during the operation and the surgeon is responsible for the negligence of the nurse. But, in the absence of special contract, the surgeon is not responsible for the negligent act of a nurse in the after treatment of the patient following the operation unless it appears that the surgeon assumes to continue his control and direction of the nurse following the operation. Stewart v. Manasses, 244 Pa., 221, 90 A., 574; Baker v. Wentworth, 155 Mass., 338, 29 N. E., 589; Hunner v. Stevenson, 122 Md., 40, 89 A., 418; Wright v. Conway, 34 Wyo., 1, 241 P., 369, 242 P., 1107;

Covington v. Wyatt, 196 N. C., 367, 145 S. E., 673; Aderhold v. Bishop, 94 Okl., 203, 221 P., 752, 60 A. L. R., 147; 48 C. J., 1137.

The doctrine of res ipsa loquitur rests upon the practical necessity of requiring the defendant to bring forward some explanation of how the injury occurred where the explanation is peculiarly and exclusively within his knowledge. It has never been extended, so far as we are advised, to the point of requiring him to show affirmatively that plaintiff was injured by an instrumentality not under his control. Such an extension and application of the doctrine would require the defendant to prove the essentials of plaintiff's case for him. Until it is shown that plaintiff was injured by an instrumentality under the control of defendant, and that the occurrence is such that in the ordinary course of events such an injury does not occur, the defendant is under no duty to show that the injury was not due to his want of care.

There is no proof, and it is not insisted, that the cut on plaintiff's eye was caused by a surgical instrument. On the contrary, the eye specialist, who was introduced as a witness for plaintiff, testified that it was most probably caused by a finger nail and was probably self-inflicted. We agree with the circuit judge that to have submitted the case to the jury, under these circumstances, would have permitted the jury to speculate as to whether the injury occurred in the operating room where, as we have seen, plaintiff was under the control of defendant, whether it occurred in transit from the operating room to plaintiff's private room, or occurred after he was left in the custody of the nurse.

The burden of proof rested upon plaintiff to establish as a necessary fact, prerequisite to the application of the doctrine of res ipsa loquitur, that the injury occurred while the plaintiff was under the control of defendant. This burden plaintiff failed to carry.

It is next insisted that defendant expressly assumed the responsibility for the safety of plaintiff following the operation. It appears that, after plaintiff was taken from the operating room to his room in the hospital, members of his family stated to the defendant that plaintiff was violent under ether and expressed some apprehension that he would injure himself. It is in evidence that defendant then stated that it would not be necessary for him, defendant, to remain with the patient during the night, that "they" would take care of him, one of the witnesses stating that defendant said "we will take care of him." If it could be said that this conversation was sufficient to establish a contract for the protection of plaintiff, we think it is clear that it was not contemplated that defendant should remain with the patient during the night for these witnesses expressly state that defendant stated that it would not be necessary for him to remain with the patient. It is clear that the expressions attributed

to the defendant could not reasonably have been construed to mean that defendant, contrary to the prevailing custom, would remain with plaintiff during the night. We think he merely intended to reassure plaintiff's family that plaintiff would be properly cared for at the hospital.

It is affirmatively shown by the uncontradicted proof that this conversation occurred in the presence of Miss Nipper. It is shown that graduate nurses are especially trained to care for patients following operations of this kind and that most patients are violent in some degree while under the influence of an anesthetic. It is shown by the testimony of defendant and other physicians that it is considered safe practice to leave patients in the care of a graduate nurse following the administration of an anesthetic and that it is not customary for surgeons to remain with their patients until they recover consciousness. Under these circumstances we do not think defendant was negligent in leaving plaintiff in the care of Miss Nipper, who knew of the violent propensities of plaintiff. Furthermore, if defendant had remained with plaintiff during the night and until he recovered consciousness, it is not shown that he could have done anything to prevent him from injuring himself except by strapping him down and, according to the undisputed proof, this is not considered good practice for the reason that where the patient is strapped he is likely to strain himself and reopen the incision or, by excessive exertion, injure his heart, which is always burdened more than normally while the patient is under the influence of an anesthetic.

While the occurrence of this injury to plaintiff is most unfortunate, we do not think the record establishes liability upon the part of defendant, and it results that the circuit court was correct in directing a verdict in his behalf. All assignments of error are accordingly overruled and the judgment below affirmed, with costs.

Portrum and Ailor, JJ., concur.