## HOHENTHAL v. SMITH.

### No. 7461.

United States Court of Appeals for the
District of Columbia.

Decided July 22, 1940.

Harlan Wood and Levi H. David, both of Washington, D. C., for appellant.

Austin F. Canfield and William T. Hannan, both of Washington, D. C., for appellee.

Before STEPHENS, MILLER, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from a directed verdict and judgment for defendant Howard Lee Smith in an action for damages growing out of alleged malpractice in causing a subcutaneous needle to be broken off in the body of plaintiff Mary Eleanor Browning Hohenthal and failing to remove it promptly. The verdict was directed at the close of plaintiff's evidence, which, so far as pertinent to the issues on appeal, is substantially as follows:

January 24, 1936, defendant performed an operation on plaintiff for gall bladder disability at Emergency Hospital. Immediately following the operation plaintiff was removed to the room which she had engaged in the hospital. Because plaintiff had lost a considerable amount of body fluid during the operation, defendant instructed an intern to administer a hypodermoclysis, consisting of a saline and glucose solution. This the intern proceeded to do while plaintiff was still unconscious from the anaesthetic and after defendant had left. The equipment for the hypodermoclysis was furnished by the hospital and was brought in by a nurse. There is evidence tending to show that the lights had been dimmed in the room and were not turned up during the injection. While the intern was inserting the needles in plaintiff's sides under the armpits the needle on the right side broke off at the hub, leaving a segment two inches in length in the subcutaneous tissues. He examined the hub carefully and testified that it appeared to be a "little blackish" or rusty inside, leading him to conclude that it was latently defective. He tried to withdraw the broken needle but was unable to do so and called the resident physician, Dr. Mitrani. After several attempts to retrieve the needle Dr. Mitrani called defendant. Defendant decided to allow the needle to remain temporarily.

Plaintiff felt pain in her right side at various times during the next six weeks, but she apparently never demanded and defendant did not volunteer information as to its cause. On March 7, 1936, defendant informed her that the needle had been broken off in her side and that it should be removed. She immediately consulted another doctor, who advised her that the needle should be removed at once. She returned to defendant on March 9 and he operated that day to extract the needle. There is evidence to show that the needle was rusty when removed. Plaintiff testified that the defendant told her on March 16 that the needle was rusty and that the intern had been "careless" in allowing the room to remain darkened during the hypodermoclysis. After the needle was removed plaintiff continued to feel pain in her right side and consulted four other doctors. One of these, Dr. Fifer, treated her rather extensively, but he felt that he did her little good. He testified as follows: "I thought at first that she had a painful scar. But the further along I went, the more I believed it was not a painful scar, but more a worked-up case, psychological." The other doctors whom she consulted did not testify.

The trial court directed the jury to return a verdict for defendant on the grounds that (1) defendant was not responsible for the negligence of the intern, if he was negligent, since plaintiff had failed to prove that the intern was in defendant's employ; (2) plaintiff had failed to prove that defendant's treatment after the needle was broken off in plaintiff's body was not in accordance with the standard of physicians practicing in the District. We think the trial court's ruling was correct on both points.

There is authority for the view that an operating surgeon is liable for the

negligence of hospital employees while actually assisting him in the operating room.[1] But where employees of the hospital are negligent in carrying out the surgeon's instructions as to treatment after the operation, the overwhelming weight of authority holds that the surgeon is not liable in the absence of a showing that he was negligent in giving the instructions or selecting the persons to carry them out, that he was present and could have avoided the injury by exercising due care, or that his special contract relative to the negligent employee was such as to make the doctrine of respondeat superior applicable.[2] These cases clearly hold that the mere fact that the surgeon gives the instructions, or even specially designates the particular employee who is to carry out the instructions,[3] does not give rise to a master-servant relationship. Part of the service furnished to the patient and charged for by the hospital is the assistance of nurses, interns and attendants in caring for the patient after the operation pursuant to instructions given by the operating surgeon. They perform the duty of their employer (the hospital) to the patient when they carry out the instructions of the doctor. Such evidence as there is on the point indicates that it was part of the normal duties of interns at Emergency Hospital to give hypodermoclyses after operations. There is no suggestion that it is the sort of thing which the operating surgeon must do himself, that it is not customary to have interns do it, or that defendant expressly or impliedly contracted to perform it himself.[4]

It follows that defendant's giving instructions to the intern to administer a hypodermoclysis did not alter the master-servant relationship between the hospital and the intern and did not create an employment contract or relation between defendant and the intern. The fact that defendant's instructions related to a "medical measure" rather than to "usual nursing measures" cannot in itself create an employment relation.[5] It is not suggested

[1] Aderhold v. Bishop, 1923, 94 Okl. 203, 221 P. 752, 60 A.L.R. 137; Notes, 1929, 60 A.L.R. 147; 1930, 65 A.L.R. 1023.

[2] Harris v. Fall, 7 Cir., 1910, 177 F. 79, 27 L.R.A.,N.S., 1174; Norton v. Hefner, 1917, 132 Ark. 18, 198 S.W. 97, L.R.A.1918C, 132; Hunner v. Stevenson, 1913, 122 Md. 40, 89 A. 418 (1914) 27 Harv.L.Rev. 492; Baker v. Wentworth, 1892, 155 Mass. 338, 29 N.E. 589; Broz v. Omaha Maternity & General Hospital Association, 1914, 96 Neb. 648, 148 N.W. 575, L.R.A.1915D, 334; Stewart v. Manasses, 1914, 244 Pa. 221, 90 A. 574; Meadows v. Patterson, 1937, 21 Tenn. App. 283, 109 S.W.2d 417; Wright v. Conway, 1925, 34 Wyo. 1, 241 P. 369, 1926, 242. P. 1107; Perionowsky v. Freeman, Q.B.,1866, 4 Foster & F. 977; Note, 1929, 60 A.L.R. 147, 150; cf. Harlan v. Bryant, 7 Cir., 1936, 87 F.2d 170; Olson v. Bolstad, 1925, 161 Minn. 419, 201 N.W. 918; Hale v. Atkins, 1923, 215 Mo.App. 380, 256 S.W. 544; Morrison v. Henke, 1916, 165 Wis. 166, 160 N.W. 173; Malkowski v. Graham, 1919, 169 Wis. 398, 172 N.W. 785, 4 A.L.R. 1524, and Note, 1919, 4 A.L.R. 1527; Note, 1919, 4 A.L.R. 191. See also Reynolds v. Smith, 1910, 148 Iowa 264, 127 N.W. 192, 194.

In Messina v. Société Francaise de Bienfaissance, La.App.,1936, 170 So. 801, the two concurring judges apparently took the view that a hospital employee becomes temporarily the employee of the surgeon while carrying out the latter's instructions even as to aftertreatment. We think this view, in its broad implications, is contrary to the clear weight of authority. Saucier v. Ross, 1916, 112 Miss. 306, 73 So. 49, which has been described as contrary to the weight of authority [Note, 1927, 46 A.L.R. 1454, 1458], holds merely that the physician is liable where by the exercise of due care he could have discovered the negligent act of the hospital employee in time to avert its harmful consequences.

There is authority to the effect that, where by contract the employee becomes pro tempore the employee of the surgeon, the latter may be liable. Simons v. Northern Pacific Ry., 1933, 94 Mont. 355, 22 P.2d 609; cf. Mullins v. Du Vall, 1920, 25 Ga.App. 690, 104 S.E. 513, (1921) 34 Harv.L.Rev. 563.

[3] Cf. Meadows v. Patterson, 1937, 21 Tenn.App. 283, 109 S.W.2d 417.

[4] Cf. Harlan v. Bryant, 7 Cir., 1936, 87 F.2d 170.

[5] The distinction is suggested in a concurring opinion in Messina v. Société Francaise de Bienfaissance, La.App., 1936, 170 So. 801, where it is said that nursing services come within the hospital's contract, whereas "medical measures" do not. Aside from creating the difficulty of distinguishing between "nursing" and "medical" activities, this thesis would appear to have the strange effect of making the hospital liable for virtually none of the acts of its interns, whereas

that defendant was negligent in giving his instructions, or in assigning the duty to the intern,[6] and, as we hold that the doctrine of respondeat superior is not applicable, we need not decide whether the intern was negligent.

■ Plaintiff contends that, even though there was no original negligence or defendant is not liable for it, he was negligent in failing to remove the needle for over six weeks after it was broken off in plaintiff's side. We think this contention must fail because plaintiff has not substantiated it with any evidence in the record. It is clear that a plaintiff in a malpractice action has the burden of proving that the defendant was negligent.[7] It is equally clear that to prove negligence plaintiff must show that defendant's practice did not accord with the standard of members of his profession in the same locality.[8] Plaintiff has proved that defendant allowed the broken needle to remain in her side for over six weeks, but she has not proved that it was negligent to do so. Only two doctors were called as witnesses by plaintiff—the intern and Dr. Fifer. Neither was asked whether the treatment given by defendant was contrary to accepted practice among physicians in the District, or even whether he considered the treatment negligent. The other doctors who had examined and treated plaintiff were not called, and plaintiff expressly disavowed any intention to subpoena them.

■ Plaintiff contends that even though she has failed to produce evidence of negligence in the treatment she is entitled to go to the jury under the doctrine of res ipsa loquitur. But defendant's conduct does not speak for itself as being negligent. We cannot say as matter of law that the mere leaving of the needle in the patient's body under the circumstances shown by the evidence was sufficient to sustain a verdict of negligence or that the length of time which elapsed before defendant informed plaintiff of its presence and removed it was sufficient for this purpose. The operation was a major one. It left the patient greatly weakened, as shown by the necessity for the hypodermoclysis and other evidence. The patient's own evidence shows that she was of highly nervous disposition. These facts, which are uncontradicted, certainly point as clearly to the conclusion that the decision to allow the needle to remain until the patient's strength was recovered sufficiently to withstand the effects of the removal, physical and psychological, was proper, if not essential to preventing serious impediment to recovery, as to that of negligence. In fact, we think they constitute no evidence of or basis for inferring negligence.

We think also the same conclusion must be reached with reference to the so-called delay in making the needle's presence known to the plaintiff and removing it. The operation took place on January 24. Plaintiff remained in the hospital until Febru-

the surgeon would be liable for practically all of them. Interns, being doctors, obviously are retained by the hospital to perform medical services, just as nurses are retained to perform nursing services. Why the hospital should be liable (if it is liable under any circumstances merely for the negligent acts of its servants, as to which we express no opinion) for the negligence of some of its servants (nurses) but not of others (interns) when it contracts to furnish the services of both to the patient is difficult to understand. Conversely, why the surgeon should be liable for the negligence of some of the hospital's servants (interns) but not of others (nurses) when he has not contracted to furnish the services of either to the patient is equally difficult of comprehension. In determining whether he has impliedly contracted to furnish the services in question, the fact that he might perform them himself is not controlling. The significant question is whether the services are of the type normally performed by the hospital through its servants, whether nurses or interns.

6 Cf. Levy v. Vaughan, 1914, 42 App. D.C. 146.

7 Cayton v. English, 1927, 57 App.D.C. 324, 23 F.2d 745; Carr v. Shifflette, 1936, 65 App.D.C. 268, 82 F.2d 874; Ewing v. Goode, C.C.,S.D.Ohio, 1897, 78 F. 442.

8 Sweeney v. Erving, 1910, 35 App.D. C. 57, 43 L.R.A.,N.S., 734, affirmed, 1913, 228 U.S. 233, 33 S.Ct. 416, 57 L. Ed. 815, Ann.Cas.1914D, 905; Levy v. Vaughan, 1914, 42 App.D.C. 146; Carson v. Jackson, 1922, 52 App.D.C. 51, 281 F. 411; Cayton v. English, 1927, 57 App.D.C. 324, 23 F.2d 745; Wilson v. Borden, 1932, 61 App.D.C. 327, 62 F.2d 866; Carr v. Shifflette, 1936, 65 App.D. C. 268, 82 F.2d 874.

ary 10, when she was removed to her home in an ambulance. Defendant thereafter attended her at home. On February 27 she visited defendant at his office, and returned on March 7, when he informed her of the presence of the needle and told her, "We will have to take it out before it either causes an infection or moves down to a danger zone." Two days later, March 9, defendant removed the needle at the hospital, using a local anaesthetic.

The total length of time which elapsed between the operation and giving plaintiff the information concerning the needle's presence was six weeks. More than two of these were spent in the hospital and when she left it she was removed in an ambulance. Thereafter recovery appears to have been rapid, and within a little more than three weeks after she returned to her home and within ten days after she first appears to have been able to go to defendant's office, he informed her fully concerning the facts and the necessity for removal. We cannot say as matter of law that defendant should have informed her earlier or that a jury would be justified in finding that he should have done so. He acted with reasonable promptness in view of all the circumstances and a verdict that it was negligent for him not to do so earlier, on the evidence here presented, hardly could be sustained. The mere fact that plaintiff suffered pain from the needle during the period prior to its removal does not make the failure to remove it earlier negligent. In addition to the shortness of the time, it must be remembered that her physical condition for at least ten days following the operation was serious, her tendency toward nervousness was high, and the location of the needle in fatty tissue made danger of infection or movement to a zone of danger slight. In these circumstances there was no need for haste and there may have been real need for delay sufficient to assure that excitement or psychological disturbance incident to the removal would not cause a relapse in the patient's physical recovery. In the light of these facts the evidence indicates that the delay was not negligent rather than the contrary.

Furthermore, appellant misapplies the doctrine of res ipsa loquitur. It is permissibly applied when the facts which the plaintiff proves are sufficient to sustain an inference of negligence, although evidence directly establishing the negligent act is not available.[9] Here the evidence disclosed fully the nature of the acts alleged to be negligent and as we have said, in the absence of evidence to the contrary, they present no reasonable basis for inferring negligence. Furthermore, if defendant's conduct were as obviously negligent or susceptible of an inference of negligence as plaintiff says it was, it would seem there could be no difficulty in securing confirmation of this fact from qualified physicians. Although she called two physicians to testify, as has been stated, neither was questioned on this crucial issue. The failure to question them in this respect or to call others may be consistent with plaintiff's view that negligence on the facts was so obvious that expert opinion was not required. It may be equally consistent with the view that such opinion, if presented, would be adverse.

Giving the evidence the interpretation most favorable to plaintiff,[10] we think she has failed to prove that defendant was negligent or to establish a sufficient basis for permitting the jury reasonably to infer that he was. The judgment is affirmed.

[9] Moore v. Clagett, 1919, 48 App.D.C. 410, 415; Fisher v. Washington Coca-Cola Bottling Works, 1936, 66 App.D.C. 7, 9, 84 F.2d 261, 105 A.L.R. 1034; Faras v. Lower California Development Co., 1915, 27 Cal.App. 688, 695, 151 P. 35, 38; Cook v. Newhall, 1913, 213 Mass. 392, 395, 101 N.E. 72, 73–74; Fitzgerald v. Southern Ry., 1906, 141 N.C. 530, 54 S.E. 391, 6 L.R.A.,N.S., 337.

[10] Jackson v. Capital Transit Co., 1938, 69 App.D.C. 147, 99 F.2d 380.