IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2003 Session

## JOHN MCCONKEY v. STATE OF TENNESSEE

**Appeal from the Claims Commission for the State of Tennessee**
**No. 20101807     W.R. Baker, Commissioner**

**No. M2002-02671-COA-R12-CV - Filed September 4, 2003**

John McConkey ("Plaintiff") had a vasectomy performed by a state-employed doctor. Plaintiff experienced swelling and pain after the operation, which he claimed caused him to lose time at work and caused problems in his marriage. Plaintiff underwent two subsequent surgeries including the removal of his left testicle. Plaintiff brought this claim against the doctor who performed the vasectomy. Plaintiff had no expert witness at trial. After trial, the Claims Commission ("Commission") entered an order holding, *inter alia*, that Plaintiff did not carry his burden of proof to establish a *res ipsa loquitur* case. Plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Claims Commission Affirmed;**
**Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Charles Galbreath, Nashville, Tennessee, for the Appellant, John McConkey.

Paul G. Summers, Michael E. Moore, and Martha A. Campbell, Nashville, Tennessee, for the Appellee, State of Tennessee.

# OPINION

## Background

Plaintiff filed his claim against Barton Warner, M.D. ("Dr. Warner") with the Division of Claims Administration. The claim was transferred to the Tennessee Claims Commission. The State answered the complaint claiming that Dr. Warner was not a proper Defendant as Dr. Warner is entitled to state-employee immunity and that the proper defendant was the State of Tennessee. The claim proceeded with the State of Tennessee as the defendant with the claim being heard before the Tennessee Claims Commission.

Plaintiff went to the Rutherford County Health Center in Murfreesboro to have a vasectomy. Dr. Warner performed the operation. After the procedure, Dr. Warner told Plaintiff that there had been some complications. Plaintiff stated Dr. Warner told him he "[h]ad a hard time getting to the left side to - - what he had to do on the left side and had accidentally cut the varicose vein in the process."

Plaintiff's wife at the time of the operation, Terry Lee Adcock, testified that Dr. Warner told Plaintiff after the operation not to drink alcohol for 48 hours. Ms. Adcock claims that Plaintiff stopped on the way home from the surgery and purchased a liter of Crown Royal, which he started drinking as soon as he got home. Ms. Adcock further stated that Plaintiff finished the entire bottle before the end of the day. Plaintiff, however, claims he did not drink alcohol the night of the surgery, but that he simply went home and slept.

Plaintiff experienced swelling and pain after the operation. Plaintiff stated his "[t]esticles were basically the size of - - I'd say tomatoes." He further claims the left one stayed at that size, but the right one was not as bad. Plaintiff attempted to go back to work "that following Monday," but was unable to do so due to the pain and swelling. Plaintiff's wife called the doctor's office and was told Plaintiff should stay in bed for another week, apply ice, and continue taking medicine the doctor had prescribed. Plaintiff did not return to Dr. Warner's office. Plaintiff and his wife did talk to Dr. Warner on the phone regarding the problems Plaintiff was having.

A couple of weeks after the surgery, Dr. Warner went to Plaintiff's home and examined him. Dr. Warner then took Plaintiff to see another physician, Dr. Cleveland, at his office. The two doctors conferred and Dr. Cleveland admitted Plaintiff to the Murfreesboro Medical Center. At the Murfreesboro Medical Center, Plaintiff had a second surgery. Plaintiff continued to experience pain following this surgery. Plaintiff stated he was unable to work "when the pain would hit me." At some point following the second surgery, Plaintiff's wife moved out and the parties subsequently divorced.

Over one year after the vasectomy, Plaintiff had a third operation, which Plaintiff claims was "[b]ecause of the pain." During that surgery, Plaintiff's left testicle was removed.

-2-

Plaintiff stated that his pain never completely stopped. He stated the pain is less than it was, but that it does not change. Plaintiff admitted that he is capable of having normal sexual relations.

Plaintiff claims that Dr. Warner said "he had accidentally cut the varicose vein, and that was mainly the problem. That was the cause of . . . all the swelling and the bruising that I had."

At trial, Plaintiff attempted to use Dr. Warner as his expert witness. The State objected on the ground that Plaintiff never identified Dr. Warner as an expert witness in Plaintiff's answers to interrogatories. Plaintiff did identify two other doctors as experts that Plaintiff planned to use at trial, but Plaintiff called neither of these two doctors to testify at trial.

Dr. Warner testified that he admitted to Plaintiff that he had accidentally severed a vein. Plaintiff's counsel asked Dr. Warner if the accidental severing of the vein caused Plaintiff to need the two subsequent surgeries, but the Commissioner sustained the State's objection to this question because Dr. Warner was testifying as a fact witness and not as an expert. At that point in the trial, Plaintiff asked if he had the option of taking a nonsuit and then told the State he would accept "the offer" if it hadn't been withdrawn. A discussion was held off the record.

The Commissioner then informed Plaintiff that, if he took a nonsuit, he would be able to re-file suit only within one year of the original injury as the saving statute does not apply in cases against the State. As more than one year had passed since the injury, Plaintiff chose not to take a nonsuit. Plaintiff then announced to the Commissioner that they had accepted an offer from the State. The State disputed this statement claiming the offer no longer was open for acceptance and that it was improper for Plaintiff to address this subject in front of the Commissioner. Plaintiff insisted the case was settled, but the State insisted that it was not. The trial continued.

At the conclusion of the trial, the Commission entered an order dismissing Plaintiff's claim. The Commission's core finding was that it was not common knowledge whether an accidental severing of a vein during a vasectomy could occur in the absence of negligence. Thus, the Commission held, among other things, that Plaintiff did not sustain his burden of proving a *res ipsa loquitur* case. Plaintiff filed a motion to alter or amend the judgment. The Commission entered an order denying Plaintiff's motion to alter or amend and reiterating that it is not within common knowledge whether an incident of this sort happens in the absence of negligence and, thus, Plaintiff did not sustain his burden. Plaintiff appeals to this Court.

**Discussion**

Although not stated exactly as such, Plaintiff raises only one issue on appeal: whether Plaintiff satisfied his burden of proof under *res ipsa loquitur*.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of

law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Medical malpractice actions in Tennessee, such as this case, are governed by Tenn. Code Ann. § 29-26-115, which states, in pertinent part:

(a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

* * *

(c) In a malpractice action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

Tenn. Code Ann. § 29-26-115 (2003). Section (c) of Tenn. Code Ann. § 29-26-115 is a codification of the common law doctrine of *res ipsa loquitur* which has been stated as follows:

[W]here the thing [causing the harm] is shown to be under the management of defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.

*Franklin v. Collins Chapel Connectional Hosp.*, 696 S.W.2d 16, 19 (Tenn. Ct. App. 1985) (quoting *Sullivan v. Crabtree*, 258 S.W.2d 782, 783-84 (Tenn. Ct. App. 1953) (citation omitted). "*Res ipsa* has only to do with negligence and just as positive proof of negligence does not constitute proof of causation; proof of negligence via *res ipsa* does not constitute proof of causation." *German v.*

*Nichopoulos*, 577 S.W.2d 197, 202 (Tenn. Ct. App. 1978), *overruled on other grounds by Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86 (Tenn. 1999).

Traditionally, the use of *res ipsa loquitur* in medical malpractice cases in Tennessee was confined to cases that fell within the common knowledge exception. The common knowledge exception applied "where the alleged acts of negligence are so obvious that they come within the common knowledge of laymen." *Kennedy v. Holder*, 1 S.W.3d 670, 672 (Tenn. Ct. App. 1999), *overruled in part by Seavers*, 9 S.W.3d at 86. The classic examples of common knowledge cases are those where a sponge is left in the patient's body following surgery or where the patient's eye is cut during an admission for an appendectomy. *See Rural Educ. Assoc. v. Bush*, 298 S.W.2d 761 (Tenn. Ct. App. 1956); *Meadows v. Patterson*, 109 S.W.2d 417 (Tenn. Ct. App. 1937).

Our Supreme Court, however, extended the permissible use of *res ipsa loquitur* in the 1999 case of *Seavers v. Methodist Medical Center*, overruling cases that had held *res ipsa loquitur* could not be used if expert testimony was required. *Seavers,* 9 S.W.3d at 86. The *Seavers* Court held that "expert testimony may be used to establish a *prima facie* case of negligence under res ipsa loquitur." *Id*. at 96. The Court further explained in its order denying the petition to rehear, that "res ipsa loquitur is no longer confined in Tennessee to the realm of cases within the 'common knowledge' of the jurors. Instead, res ipsa loquitur may be used in combination with expert testimony to raise an inference of negligence, even in those cases where expert testimony is required." *Id*. at 98 (Order Denying Petition To Rehear).

We hold that the Commission did not err when it held that Plaintiff did not carry his burden of proving a *res ipsa loquitur* case. Under the statute, Plaintiff needed to prove both that the instrumentality causing the injury was in Defendant's exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

Plaintiff's brief argues that an accidental severing of a vein is unintentional and, thus, a layperson would know that such an accident is not consistent with ordinary medical care. Plaintiff further argues that a layperson knows that "a vasectomy is not an inherently risky procedure" and that absent negligence "does not require any further medical procedure." The Commission correctly noted that it is common knowledge that a vasectomy is a delicate surgical procedure. Beyond this knowledge, however, a layperson does not know what risks are inherent in a vasectomy. Likewise, a layperson would not know whether the cutting of the vein as occurred in this case is something that ordinarily does not occur in the absence of negligence or instead is a complication that may occur even without negligence.

Even if we assume that Plaintiff's injuries resulted from the severed vein and that the instrumentality, the scalpel, was within Defendant's exclusive control, Plaintiff produced no evidence showing that an accidental severing of a vein ordinarily does not occur in this type surgery in the absence of negligence. Plaintiff's brief argues that as the severing was accidental, negligence is implied. Plaintiff is mistaken. It may be that Defendant could have performed the vasectomy with ordinary and reasonable care in accordance with the recognized standard of acceptable professional

practice and still have accidentally severed the vein. The problem for Plaintiff is that this is knowledge that a layperson, including the Commission and this Court, simply does not possess. Further, Plaintiff presented no expert proof that his injury was one which ordinarily doesn't occur in the absence of negligence. The Commission and this Court both were faced with a record in which there is neither common knowledge nor expert proof that Plaintiff's injury is one which ordinarily does not occur in the absence of negligence.

Neither this Court nor the average layperson knows whether accidentally severing a vein during a vasectomy is an injury which ordinarily does not occur in the absence of negligence. As such, this case does not fall into the common knowledge exception and expert testimony was required to establish the elements of Plaintiff's *res ipsa loquitur* claim, as permitted by *Seavers*. Plaintiff produced no expert evidence whatsoever. Plaintiff failed to carry his burden of proving the second prong of *res ipsa loquitur*, that the accidental severing of a vein ordinarily does not occur during this type of procedure in the absence of negligence.

Plaintiff failed to produce evidence to establish a *res ipsa loquitur* case. Since the Plaintiff "failed to introduce required expert testimony to establish a *prima facie* case of negligence even under res ipsa loquitur . . .", the Commission did not err in dismissing Plaintiff's claim. *Seavers*, 9 S.W.3d at 98 (Order Denying Petition To Rehear). We, therefore, affirm the Commission's dismissal of Plaintiff's claim.

## Conclusion

The judgment of the Commission is affirmed, and this cause is remanded to the Commission for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, John McConkey, and his surety.

_____
D. MICHAEL SWINEY, JUDGE