IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2018 Session

## DEBORAH L. AKERS v. HERITAGE MEDICAL ASSOCIATES, P.C., ET AL.

**Appeal from the Circuit Court for Davidson County**
No. 15C4222        Thomas W. Brothers, Judge

———————————————————

### No. M2017-02470-COA-R3-CV

———————————————————

This is a health care liability action in which the plaintiff asserted claims of professional negligence, negligent supervision, and medical battery against a physician's assistant, a dermatologist, and their employer. The trial court granted the defendants' motion for summary judgment under Tennessee Rule of Civil Procedure 56.02, motion for dismissal under Tennessee Rule of Civil Procedure 37.02, and motion for sanctions under Tennessee Code Annotated section 29-26-122(d). We agree with the trial court's determination that the plaintiff failed to obtain a competent expert witness to testify on the applicable standard of care as required by Tennessee Code Annotated section 29-26-115 and violated Tennessee Code Annotated section 29-26-122 by filing a non-compliant certificate of good faith. Accordingly, we affirm the trial court's dismissal of plaintiff's action and award of sanctions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD R. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Deborah Akers, Nashville, Tennessee, pro se.

Rachel Hogan and Wendy Longmire, Nashville, Tennessee, for the appellees, Heritage Medical Associates, Shelly F. Franklin, M.D., and Ivylee B. Trump, P.A.-C.

### OPINION

On November 19, 2014, Deborah Akers ("Plaintiff") went to the office of Heritage Medical Associates ("Heritage") for treatment of a rash on her wrist. Plaintiff was seen by Dr. Shelly Franklin's physician assistant, Ivylee Trump, who treated Plaintiff by performing a punch biopsy of the area and suturing the resulting laceration.

Two days later, Plaintiff awoke with "flu-like symptoms" and noticed red streaks emanating from the wound. Plaintiff's husband promptly took her to the St. Thomas Hospital Emergency Room, where George Carpenter, M.D., evaluated her. Dr. Carpenter diagnosed Plaintiff's condition as cellulitis[1] and lymphangitis[2] and treated her for a *staphylococcus aureus* infection.

On November 23, 2015, Plaintiff filed a complaint against Heritage, Dr. Franklin, and Ms. Trump (collectively, "Defendants"). Plaintiff asserted a professional-negligence claim against Defendants, a medical-battery claim against Ms. Trump and Dr. Franklin, and a negligent-supervision claim against Dr. Franklin and Heritage. Plaintiff alleged that Ms. Trump was not qualified to perform the punch biopsy and did not wash her hands, wear gloves, or use sterile medical equipment when performing the procedure. Plaintiff also alleged that, as a result, she suffered from the *staphylococcus* infection and was incapacitated for 11 days. Defendants answered the complaint and denied any wrongdoing.

On December 21, 2015, Defendants served Plaintiff with interrogatories, including the following:

> 4. State the name, address, qualifications, and relationship to any Plaintiff of any and all experts you have retained or hired or consulted in the preparation of the above styled case; and as to each expert you expect to testify, state the subject matter on which he and all such expert(s) are expected to testify; summarize the substance of each and every opinion to which each expert is expected to testify; summarize the grounds for or basis of each opinion to which each expert is expected to testify, and identify and describe any documentary source of information examined by or considered by each expert in the formation of the opinion to which the expert is expected to testify.

---

[1] Cellulitis is defined as "[i]nflammation of subcutaneous, loose connective tissue." *Stedmans Medical Dictionary* (Lippincott, Williams, & Wilkins 27th ed. 2000), available on Westlaw at STEDMANS 159930 (updated Nov. 2014).

[2] Lymphangitis is defined as "[i]nflammation of the lymphatic vessels." *Stedmans Medical Dictionary* (Lippincott, Williams, & Wilkins 27th ed. 2000), available on Westlaw at STEDMANS 516780 (updated Nov. 2014).

5. For each person so identified in the previous interrogatory, please disclose any and all qualifications (including a list of all publications authored in the previous ten (10) years[)], a list of all other cases in which, during the previous four years, the witness testified as an expert, and a statement of the compensation to be paid for the study and testimony in the case.

Plaintiff responded by providing the following:

George Carpenter, M.D., c/o Saint Thomas West Hospital, 4220 Harding Road, Nashville, Tennessee 37205; no relationship to herein Plaintiff other than Doctor Patient; causation, severity, Emergency Room treatment, "post-release treatment plan & instructions"; & follow up recommendations.

.     .     .

Qualifications are self-evident; list of all publications authored in the previous ten (10) years is unknown; list of all other cases in which during the previous four years the witness testified as an expert is unknown; statement of the compensation to be paid for the study and testimony in the case is yet to be determined.

(punctuation added).

By letter, counsel for Defendants requested Plaintiff to amend several of her responses, including the responses to interrogatories four and five, above. In response, Plaintiff asserted that her responses were "both accurate and complete" and stated, "If you/your clients yet assert the same to be woefully insufficient please feel free to seek a ruling from the Court." Accordingly, on May 2, 2016, Defendants filed a motion to compel Plaintiff's amended responses.

Before the motion was heard, the parties agreed to supplement their responses to each other's discovery requests. However, Plaintiff made no changes to her response to interrogatory number four. Plaintiff amended her response to interrogatory number five by adding that Dr. Carpenter's "[q]ualifications are self-evident inasmuch as witness is a licensed Medical Doctor in good standing within the State of Tennessee" and asserting that the compensation to be paid was "premature for disclosure at [the] current stage of litigation."

On September 28, 2016, counsel for Defendants sent a second letter to Plaintiff asserting, *inter alia*, that Plaintiff's response to interrogatory number four remained deficient. After receiving no response, Defendants renewed their motion to compel.

On December 12, 2016, after a hearing on Defendants' Motion to Compel, the trial court entered an order requiring Plaintiff to, *inter alia*, supplement her response to interrogatory number four. Plaintiff filed supplemental responses; however, Plaintiff's response to number four simply contended that the issue was premature because the court had not set a deadline for disclosure of expert witnesses.

After the parties attended a second case-management conference, the trial court entered an order requiring Plaintiff to disclose her expert witnesses by July 10, 2017. In response, Plaintiff filed a "Disclosure of Expert Witness(es)" that provided the following:

| | |
|---|---|
| (A)(i): Identity: | Dr. George K. Carpenter III, M.D. |
| | 4220 Highway 70 South |
| | Nashville, Tennessee 37205 |
| (ii): Subject Matter: | Probable causation and nature of Plaintiffs injuries sustained at the Defendants' Cool Springs, Tennessee offices on November 19, 2014; severity of Plaintiffs condition when treated at the St. Thomas Hospital Emergency Room, 4220 Harding Pike, Nashville, TN 37205 on November 21 & 22, 2014; & long term prognosis for Plaintiffs full recovery from injuries sustained at Defendants' Cool Springs, Tennessee offices on November 19, 2014; & |
| (iii): Substance of Testimony: | That Plaintiffs injuries sustained at the Defendants' Cool Springs, Tennessee offices on November 19, 2014, could not likely have been the result of any factors other than negligence on the part of those same Defendants; & the probabilities of long term negative physical implications as the proximate result of the Plaintiffs injuries sustained at the Defendants' Cool Springs, Tennessee offices on November 19, 2014. |
| (B)(i); Identity: | Dr. Geoffrey D. Lifferth, M.D. |

555 Hartsville Pike

Gallatin, TN 37066

| | |
|---|---|
| (ii): Subject Matter: | Probable causation and nature of Plaintiff's injuries sustained at the Defendants' Cool Springs, Tennessee offices on November 19, 2014; & |
| (iii): Substance of Testimony: | That Plaintiffs injuries sustained at the Defendants' Cool Springs, Tennessee offices on November 19, 2014, could not likely have been the result of any factors other than negligence on the part of those same Defendants; & the probabilities of long term negative physical implications as the proximate result of the Plaintiffs injuries sustained at the Defendants' Cool Springs, Tennessee offices on November 19, 2014. |

On August 4, 2017, Defendants filed a Motion to Strike the disclosure, contending that it failed to (a) identify a standard of care expert; (b) state the grounds for the experts' opinions; (c) provide the experts' qualifications; (d) list the cases in which the experts had testified; and (e) state the amount of compensation to be paid. The trial court heard the motion on August 18, 2017, and ordered the parties to meet and confer in good faith to resolve the dispute. The same day, Plaintiff met with Defendants' counsel and revealed that she had not retained the experts identified in her disclosure. Nonetheless, she agreed to supplement her disclosure by September 11, 2017.

On September 7, 2017, Defendants filed a Motion for Summary Judgment, alleging that Plaintiff's evidence could not establish any of her claims.

Defendants' Motion to Strike was heard on September 15, 2017, and the court ordered Plaintiff to supplement her interrogatory responses related to expert witnesses by October 2, 2017. Defendants submitted a proposed order on September 20, 2017, and a signed copy was entered on September 29, 2017. The order provided that, if Plaintiff met the October 2 deadline, the court would entertain a motion to continue Defendants' pending Motion for Summary Judgment. The order also notified Plaintiff that the Motion for Summary Judgment was set for a hearing on October 20, 2017; Plaintiff's response was due by October 13, 2017; and failing to file a response might cause the Defendants' motion to be granted.

Despite the fact that Plaintiff had been present at the September 15, 2017 hearing, she filed no supplemental disclosure by the October 2, 2017 deadline. Accordingly, on October 5, 2017, Defendants filed a Motion to Dismiss that requested the court dismiss Plaintiff's claims as a sanction under Tennessee Rule of Civil Procedure 37.02 for her failure to comply with the court's discovery orders. Plaintiff responded on October 13, 2017, by filing a Motion for Enlargement of Time. Plaintiff asserted that she did not receive a signed copy of the order until after the October 2 deadline and requested an additional forty-five days to supplement her disclosure of expert witnesses.

On the morning of October 20, 2017, the day on which the court was to hear Defendants' Motion to Dismiss and Motion for Summary Judgment, Plaintiff requested a continuance due to illness. Consequently, the court continued the motions to November 3, 2017.

Plaintiff and counsel for Defendant were present at the November 3 hearing, after which the trial court entered two orders: one granting Defendants' Motion for Summary Judgment and one granting Defendants' Motion to Dismiss. The trial court granted Defendants' Motion for Summary Judgment upon finding that (1) Plaintiff conceded that she did not have expert proof; (2) Plaintiff admitted in her deposition testimony that she consented to the biopsy; and (3) there was no proof that Ms. Trump was not properly qualified and licensed when Heritage hired her. The trial court granted Defendants' Rule 37.02 Motion to Dismiss upon finding that (1) Plaintiff was present at the hearing when the court ordered her to supplement her responses by October 2, 2017; (2) a written order was entered that accurately reflected the court's oral ruling; and (3) Plaintiff failed to comply with the order.

On December 1, 2017, Defendants filed a motion to compel and for sanctions, requesting the court (1) compel Plaintiff to disclose the expert-witness statements on which she relied when filing her certificate of good faith, and, if she failed to do so, (2) award sanctions against Plaintiff pursuant to Tennessee Code Annotated section 29-16-122(d)(2).

On May 11, 2018, the trial court ordered Plaintiff to produce the experts' signed, written statements on which she had relied when filing her certificate of good faith. In response, Plaintiff filed her medical records from the St. Thomas Hospital Emergency Room. On June 7, 2018, the trial court entered a final order granting Defendants' Motion for Sanctions. The trial court found that Plaintiff violated Tennessee Code Annotated section 29-26-122 by failing to obtain a signed, written statement before she executed her

certificate of good faith and awarded Defendants a $15,000 judgment against Plaintiff. This appeal followed.[3]

Plaintiff contends the trial court erred in several respects when it granted Defendants' Motion for Summary Judgment, Motion to Dismiss, and Motion for Sanctions. We consider each issue as follows.

## ANALYSIS

### I. SUMMARY JUDGMENT

The trial court summarily dismissed Plaintiff's claims of professional negligence, negligent supervision, and medical battery. In this appeal, however, Plaintiff failed to develop an argument in support of her contention that the trial court erred in dismissing her claims of negligent supervision and medical battery.[4] "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). Therefore, we affirm the trial court's dismissal of Plaintiff's claims of negligent supervision and medical battery.

With regard to the sole remaining claim of professional negligence, Plaintiff contends that her interrogatory responses and her Rule 26 disclosure provided sufficient information about her expert witnesses to defeat Defendant's motion for summary judgment.

In a healthcare liability claim, the plaintiff must prove:

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

---

[3] On December 15, 2017, Plaintiff filed a premature Notice of Appeal. On February 16, 2018, this court entered an order directing the parties to obtain an order from the trial court disposing of the Defendants' Motion to Compel. Once that was accomplished, this appeal proceeded.

[4] Although she raised issues related to these claims at oral argument, Plaintiff did not develop these issues in her brief.

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Tenn. Code Ann. § 29-26-115(a)(1) to (3).

This test "requires the plaintiff to 'show that the defendant failed to act with ordinary and reasonable care when compared to the customs or practices of physicians from a particular geographic region,' namely, 'the community in which [the defendant] practices or in a similar community.'" *Griffith v. Goryl*, 403 S.W.3d 198, 205–06 (Tenn. Ct. App. 2012) (quoting *Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn. 1986)). "[A] physician assistant must be held to the 'recognized standard of acceptable professional practice in the profession' of physician assistants and any specialty thereof, and not to a standard applied to physicians." *Cox v. M.A. Primary & Urgent Care Clinic*, 313 S.W.3d 240, 258 (Tenn. 2010) (quoting Tenn. Code Ann. § 29-26-115(a)(1)). Therefore, to establish a health care liability claim against a physician assistant, "the plaintiff must adduce testimony by an expert who is qualified to testify about (1) the standard of care applicable to physician assistants and (2) whether the physician assistant in question exercised 'the reasonable degree of learning, skill, and experience that is ordinarily possessed by others of his profession.'" *Id.* at 259 (quoting *Godbee v. Dimick*, 213 S.W.3d 865, 896 (Tenn. Ct. App. 2006)).

The elements of a healthcare liability claim "generally must be established through competent expert testimony." *Cox*, 313 S.W.3d at 259–60 (citing *Moon v. St. Thomas Hosp.*, 983 S.W.2d 225, 229–30 (Tenn. 1998); *Payne v. Caldwell*, 796 S.W.2d 142, 143 (Tenn. 1990)) (footnote omitted). An expert is "competent" when he or she meets the requirements in Tennessee Code Annotated section 29-26-115(b):

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established . . . , unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

"[T]his statutory provision requires the proffered expert to have 'a sufficient basis on which to establish familiarity with the defendant's field of practice and the standard of care required in dealing with the medical care at issue.'" *Cox*, 313 S.W.3d at 260 (quoting *Bravo v. Sumner Reg'l Health Sys., Inc.*, 148 S.W.3d 357, 367 (Tenn. Ct. App. 2003)).

When the party moving for summary judgment does not bear the burden of proof at trial, it may satisfy its burden of production "either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015). When a motion for summary judgment is made and supported as provided in Tennessee Rule of Civil Procedure 56, the non-moving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the non-moving party must respond with specific facts "showing that there is a genuine issue for trial." *Id.* (quoting Tenn. R. Civ. P. 56.06). A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.* "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Tenn. R. Civ. P. 56.06.

As the non-moving party in a healthcare liability action, Plaintiff was required to present expert testimony from a competent witness establishing (1) the standard of care Ms. Trump had to meet; (2) the manner in which her conduct failed to meet the standard of care, and (3) how Ms. Trump's failure to meet the standard of care proximately caused Plaintiff to suffer injuries she would not have suffered otherwise. *See Cox*, 313 S.W.3d at 260 (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 226–27 (Tenn. Ct. App. 1999)).

Plaintiff cites Tennessee Code Annotated section 29-26-115(c)[5] for the proposition that she was entitled to submit her claim to a jury on the theory that the instrumentality causing her injury was in Ms. Trump's exclusive control at the time of, and immediately prior to, its use in performing the punch biopsy, and that the resulting injury to Plaintiff was one that ordinarily doesn't occur absent negligence. Section 115(c) "is a codification of the common law doctrine of *res ipsa loquitur*." *McConkey v. State*, 128 S.W.3d 656, 659 (Tenn. Ct. App. 2003). While it is undisputed that the instrumentality that allegedly caused Plaintiff's injury was in Defendants' exclusive control, Plaintiff admits that she

---

[5] Tenn. Code Ann. § 29-26-115(c) provides:

In a health care liability action as described in subsection (a), there shall be no presumption of negligence on the part of the defendant; provided, that there shall be a rebuttable presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') exclusive control and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

would rely on the testimony of expert witnesses to establish that the resulting injury was one that ordinarily does not occur absent negligence. Thus, Plaintiff would have to show that Defendants were negligent, i.e., that Ms. Trump's actions fell below the applicable standard of care.[6]

In their Motion for Summary Judgment, Defendants argued that Plaintiff's evidence at the summary-judgment stage could not establish her claim for professional negligence. Specifically, Defendants argued that Plaintiff had no evidence to prove that Ms. Trump negligently performed the punch biopsy because Plaintiff had no qualified witness to testify regarding the applicable standard of care.

According to Plaintiff's Rule 26 disclosure, and as relevant here, her expert witnesses were to testify on the probable causation of Plaintiff's injuries and the likelihood that the injuries resulted from factors other than negligence by Defendants. While testimony regarding Defendants' negligence would necessarily include testimony regarding a standard of care, Plaintiff did not indicate that either witness had familiarity with Ms. Trump or Dr. Franklin's field of practice and the standard of care required in dealing with punch biopsies. Therefore, Plaintiff did not show that she could establish the elements of her professional liability claim through competent expert testimony. Accordingly, summary judgment was appropriate.

The foregoing notwithstanding, Plaintiff argues that the trial court should not have required her to produce evidence she did not have. We are not persuaded by this argument because Plaintiff had nearly three years to gather the evidence necessary to prove her case and she was afforded numerous opportunities to supplement her responses and to obtain discovery. Moreover, Plaintiff's last request for a continuance, her Motion for Enlargement of Time, was not supported by an affidavit stating why she required more time to conduct discovery, as required by Tennessee Rule of Civil Procedure 56.07.[7] "[W]e review [a] trial court's decision to deny [a request for a] continuance for an

---

[6] Although plaintiffs in healthcare liability actions are exempt from the expert-witness requirement when the "alleged acts of negligence are so obvious that they come within the common knowledge of laymen," *Cox*, 313 S.W.3d at 260 n.23 (quoting *Kennedy v. Holder*, 1 S.W.3d 670, 672 (Tenn. Ct. App. 1999)), Plaintiff does not argue that the common-knowledge exception applies in this case. Even so, we do not find that a layperson would know whether a blood infection is something that ordinarily does not occur in the absence of negligence when performing a punch biopsy or instead is a complication that may occur even without negligence. *See McConkey*, 128 S.W.3d at 660 (finding that a layperson would not know what risks are inherent in a vasectomy).

[7] Tenn. R. Civ. P. 56.07 provides:

(continued…)

abuse of discretion." *Fed. Nat'l Mortg. Ass'n v. Daniels*, 517 S.W.3d 706, 714 (Tenn. Ct. App. 2015) (citing *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 401 (Tenn. Ct. App. 2009)). Given the multiple opportunities that Plaintiff had to produce the necessary evidence and her failure to explain why she needed more time, we find no error with the trial court's decision to deny her motion.

Accordingly, we affirm summary dismissal of all of Plaintiff's claims as to all Defendants. Moreover, because we affirm the grant of summary judgment, Plaintiff's contention that the trial court erred in granting Defendants' Motion to Dismiss is moot.

## II.  SANCTIONS UNDER TENNESSEE CODE ANNOTATED SECTION 29-26-122(D)

Plaintiff contends that, even if the trial court's dismissal was proper, the court erred by awarding sanctions against her because she complied with the requirements of Tennessee Code Annotated section 29-26-122. The trial court held that Plaintiff violated section 122 because she failed to obtain a signed, written statement from an expert before executing her certificate of good faith.

Section 122 requires a plaintiff asserting a health care liability claim to file a certificate of good faith with the complaint. The certificate must provide, in relevant part:

> (1) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:
>
> > (A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and
> >
> > (B) Believe, based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115; or

---

Should it appear from the affidavits of a party opposing the motion that such party cannot for reasons stated present by affidavit facts essential to justify the opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(2) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:

> (A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and
>
> (B) Believe, based on the information available from the medical records reviewed concerning the care and treatment of the plaintiff for the incident or incidents at issue and, as appropriate, information from the plaintiff or others with knowledge of the incident or incidents at issue, that there are facts material to the resolution of the case that cannot be reasonably ascertained from the medical records or information reasonably available to the plaintiff or plaintiff's counsel; and that, despite the absence of this information, there is a good faith basis for maintaining the action as to each defendant consistent with the requirements of § 29-26-115.

Tenn. Code Ann. § 29-26-122(a)(1) to (2).

During litigation, "the written statement of an expert relied upon in executing the certificate of good faith is not discoverable." *Id*. § 29-26-122(d)(1). However, if the defendant prevails due to the plaintiff's inability to produce competent expert testimony, the defendant may request an order compelling disclosure of the written statement. *Id*. § 29-26-122(d)(2). Moreover, if the plaintiff fails to produce the written statement, the court *must* award "appropriate sanctions" against the party's attorney, or the party themselves if proceeding pro se. *Id*. § 29-26-122(d)(3).

After Defendants prevailed due to Plaintiff's failure to produce competent expert witnesses as required by Tennessee Code Annotated section 29-26-115, Defendants moved to compel Plaintiff to produce the written statement on which she relied when filing her certificate of good faith. In response, Plaintiff averred that she "relied on the 'signed written statements' contained within the 'ED Dictated Notes' of treating physician, Dr. George K. Carpenter, M.D., at Saint Thomas West Hospital Emergency Room."

The dictated notes Plaintiff relies on are composed of Dr. Carpenter's observations: Plaintiff presented with hand pain and swelling, had undergone a punch biopsy, had a red streak going up her arm, was treated by hospital staff, and was sent home "to recover from community-acquired MRSA." The only opinion included was Dr. Carpenter's diagnosis of Plaintiff's condition as cellulitis and lymphangitis. Thus, Dr. Carpenter's notes do not include the information required by section 122(a). Moreover,

the dictated notes contain no representation that he is competent under Tennessee Code Annotated section 29-26-115 to express an opinion, nor a representation that he believes there is a good faith basis for maintaining an action consistent with the requirements of section 115. Therefore, Plaintiff failed to "provide to the court a copy of each such expert's signed written statement relied upon in executing the certificate of good faith" as required by section 122(d)(2).

As noted above, when the defendant prevails due to the plaintiff's inability to produce competent expert testimony and the plaintiff fails to produce the requisite written statement, "the court shall award appropriate sanctions against the attorney if the attorney was a signatory to the action and against the party if the party was proceeding pro se." Tenn. Code Ann. § 29-26-122(d)(3). The statute goes on to provide that the sanctions may include "payment of some or all of the attorney's fees and costs incurred by a party in defending or responding to a claim or defense supported by the non-complying certificate of good faith." *Id.*

Defendants' request was for an award of their attorneys' fees of $39,930. After stating that it was "required to choose the least severe sanction sufficient to deter future conduct," the trial court imposed a sanction in the amount of $15,000. Although the trial court did not cite authority for applying this principle in this case, the well-reasoned principle is applicable when imposing monetary sanctions under Tenn. R. Civ. P. 11 and we agree with the trial court that it is applicable here.[8]

Trial courts have wide discretion to determine the appropriate sanction to be imposed. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) (citing *Lyle v. Exxon Corp.*, 746 S.W.2d 694, 699 (Tenn. 1988); *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn. Ct. App. 1981)). We review a trial court's award of monetary sanctions under the abuse of discretion standard. *Williams v. Hirsch*, No. M2016-00503-COA-R3-CV, 2018 WL 2383612, at *8 (Tenn. Ct. App. May 25, 2018) (citing *Laseter v. Regan*, 481 S.W.3d 613, 639 (Tenn. Ct. App. 2014)), *appeal denied* (Sept. 13, 2018). Having determined that the factual basis for the decision was properly supported by evidence in the record, that the court properly applied the legal principles applicable to the decision, and the decision was within the range of acceptable alternative dispositions, we affirm the award. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

For the foregoing reasons, we affirm the award of monetary sanctions against Plaintiff.

---

[8] "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Tenn. R. Civ. P. 11.03(2).

## In Conclusion

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against Plaintiff.

_____
FRANK G. CLEMENT JR., P.J., M.S.